UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CECILIA MAXIE,<br><br>  Plaintiff,<br><br>v.<br><br>DEFENSE LAWYERS, P.A.,<br><br>  Defendant. | Case No. 1:23-cv-02159 |

# COMPLAINT

Now comes CECILIA MAXIE ("Plaintiff") by and through the undersigned, complaining as to the conduct of DEFENSE LAWYERS, P.A. ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Illinois Credit Services Organizations Act ("ICSOA") under 815 ILCS 605/1 *et seq.,* and the Illinois Debt Settlement Consumer Protection Act ("IDSCPA") under 225 ILCS 429/1 *et seq.,* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Northern District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Chicago, Illinois, which lies within the Northern District of Illinois.

5. Defendant is, upon information and belief, a credit repair organization, debt settlement provider, and law firm that offers the consumers the ability to improve their credit by entering into a program whereby Defendant seeks to improve its clients' credit history by resolving debts that would otherwise go unresolved. Defendant is a professional association organized under the laws of the state of Florida with its principal place of business located at 4800 North Federal Highway, Suite A208, Boca Raton, Florida 33431.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately June of 2020, Plaintiff had a number of consumer obligations she wanted to address which were impacting her credit, and began looking into various credit repair and debt settlement services.

8. Although Plaintiff was current on her obligations at the time, she had lost her job and was fearful she would begin falling behind on her obligations.

9. Plaintiff subsequently happened upon Defendant.

10. Plaintiff spoke with a representative associated with Defendant, who touted the beneficial impact of its services and how Plaintiff could enjoy improved credit.

11. It was represented to Plaintiff that she would enroll certain debts in Defendant's program, and then if she made a series of monthly payments to Defendant, her obligations would be negotiated and resolved for less than the balance owed.

12. Defendant further represented and suggested that its services would restore Plaintiff's credit and otherwise have a net improvement on Plaintiff's creditworthiness upon Plaintiff's successful completion of Defendant's program.

13. Defendant additionally represented that because Defendant had attorneys working for it, those attorneys would be better equipped and more knowledgeable of the law so as to better deliver the reduced balances promised, while further suggesting that any violations of law they found would result in Plaintiff not having to pay back the obligations which were impacting her credit.

14. Defendant's suggestions that the purpose of its business was reduce the overall debt load impacting her credit, as well as to seek dismissal of debts impacting her credit, suggested to Plaintiff that an explicit and implicit purpose of its business was to improve Plaintiff's credit.

15. Finding the represented nature of Defendant's services attractive, Plaintiff entered into a contract with Defendant for the provision of services.

16. Plaintiff was informed by Defendant that she should cease paying her creditors, and instead divert those funds to Defendant for its services.

17. Plaintiff began making her monthly payments for Defendant's services, which totaled approximately $330.00 per month.

18. Plaintiff has made her payments faithfully to Defendant for over a year.

19. However, Defendant has failed to deliver the results or perform the services in the manner represented.

20. Defendant represented to Plaintiff that it had settled two of the enrolled obligations, one owed to Credit One, and another to Macys.

21. However, contrary to Defendant's representations, it did not resolve the Credit One debt in its entirety.

22. Plaintiff confirmed as much when Plaintiff spoke with the entity attempting to collect on the debt, Blitt & Gaines, who informed Plaintiff that they tried to settle but Defendant pulled the settlement.

23. However, Defendant charged Plaintiff as if it had resolved the Credit One debt, and repeatedly represented to Plaintiff that the debt had been resolved.

24. As such, despite Plaintiff making thousands of dollars in payments to Defendant, Defendant has failed to settle the debts despite Plaintiff making more than sufficient payments for Defendant to be able to deliver the represented results.

25. Further, Defendant allowed Plaintiff's debts to go into default, and did so by informing Plaintiff that instead of paying her creditors, those payments and funds should be diverted to Defendant.

26. Upon information and belief, Plaintiff's monthly payments have routinely gone towards various fees and charges assessed by Defendant despite such charged fees not being tied to the full completion of any services agreed to be provided.

27. When Plaintiff would ask Defendant for updates and complain about the lack of results, Defendant persistently told Plaintiff it needed more money to settle the debts, despite there being more than enough in Plaintiff's dedicated account for Defendant to provide services.

28. Defendant's conduct in improperly charging Plaintiff for services before such services were fully performed diverted funds from Plaintiff's dedicated account that could and should have gone towards Defendant negotiating Plaintiff's obligation. Defendant diverts its customers' funds in this manner so as to intentionally decrease the pool of available money from which Defendant can reach settlements, thus increasing the length of time it takes consumers to pay down their enrolled debts, in turn allowing Defendant to continue to charge unlawful and inappropriate fees.

29. Despite Plaintiff's cancelling her agreement with Defendant and Defendant failing to perform the services in the manner represented, Defendant has retained Plaintiff's payments for services it failed to fully perform and which it blatantly misrepresented to Plaintiff.

30. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient services, further out of pocket expenses, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

31. Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

32. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

33. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or

providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

34. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history, at it would allow her to resolve obligations which otherwise would go unresolved and would diminish Plaintiff's overall debt load.

    a.  **Violations of CROA § 1679b(a)**

35. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

36. Defendant violated the above provisions of the CROA through its generally deceptive representations regarding the nature of the services it would provide Plaintiff. Defendant advised that Plaintiff's credit score would improve by making monthly payments; however, Defendant's services have failed to deliver any benefit despite Plaintiff's maintenance of payments for years. Upon information and belief, Defendant routinely misrepresents the efficacy and nature of its services so as to induce acceptance of its terms, only to fail to deliver the represented results.

37. Defendant further violated the CROA through its deceptive and fraudulent omission of the true nature of its services. Defendant failed to properly or clearly explain the extent to which Plaintiff would have to allow the enrolled obligations to go into default in order for Defendant's services to become effective prior to Plaintiff agreeing to use Defendant's services. Instead,

6

Defendant represented that any negative impact of its services would be offset by the overall improvement brought about by Defendant's services.

38. Defendant further violated the above provisions of the CROA through the deceptive and misleading manner in which it charges consumers fees in a manner designed to increase the number and amount of payments consumers make to Defendant for its services. Defendant improperly depleted the pot created by Plaintiff's monthly payments, in turn increasing the amount of time it would take Plaintiff to pay down the enrolled obligations, further allowing Defendant to continue charging fees for services longer than such services needed to be performed.

39. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive representations made to Plaintiff regarding the settlement of the Credit One debt. Defendant told Plaintiff that obligation was settled; however, Plaintiff later realized the falsity of Defendant's representations as she was actively sought for the Credit One debt despite Defendant's representations that her monthly payments had been going towards resolving that obligation.

    b.  **Violation of CROA § 1679b(b)**

40. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

41. Defendant violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Upon information and belief, throughout the life of Defendant's contract, it routinely took fees for services before such services were fully performed. Further, Defendant's practice in taking its fees before enrolled

7

obligations are settled is in violation of the CROA. Defendant further charged Plaintiff for certain settlements that it did not actually achieve.

### c. Violations of CROA § 1679c

42. The CROA, pursuant to 15 U.S.C. § 1679c, outlines certain disclosures that must be provided to consumers prior to contracting with consumers.

43. Defendant violated § 1679c through its complete failure to provide Plaintiff the disclosures required by the CROA.

### d. Violations of CROA § 1679d

44. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

45. Defendant violated § 1692d(b) of the CROA through its failure to contain the required disclosure in bold face type in immediate proximity for the place reserved for Plaintiff's signature on the contract, as well as failing to follow the general requirements for contracts between consumers and CROs.

### e. Violation of CROA § 1679f(b)

46. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

8

47. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under CROA through the contract between the parties. Defendant's contract contains a number of clauses and disclaimers that seek to insulate itself from liability for its conduct in violation of the CROA, including a merger and integration clause designed to insulate itself from liability for the oral representations it makes which contradict and are inconsistent with its contractual language.

WHEREFORE, Plaintiff, CECILIA MAXIE respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE ILLINOIS CREDIT SERVICES ORGANIZATION ACT

48. Plaintiff restates and realleges paragraphs 1 through 47 as though fully set forth herein.

49. Plaintiff is a "Buyer" as defined by 815 ILCS 605/3(a).

50. Defendant is a "Credit Services Organization" as defined by 815 ILCS 605/3(d).

51. Defendant does not qualify for the exemption to the ICSOA for attorneys as it is not a person licensed to practice law in Illinois and was not acting within the course and scope of its practice as an attorney in connection with its dealings with Plaintiff.

a. **Violation of ICSOA – 815 ILCS 605/5(1)**

52. The ICSOA, pursuant to 815 ILCS 605/5(1), prohibits a credit services organization from charging or receiving "any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer . . . ."

53. Defendant violated 815 ICLS 605/5(1) in much the same way it violated 15 U.S.C. § 1692b(b) outlined above.

    b. **Violation of ICSOA – 815 ILCS 605/5(4)**

54. The ICSOA, pursuant to 815 ILCS 605/5(4), prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly and indirectly, in any act, practice, or course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services; including but not limited to: . . . the qualifications, training or experience of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services."

55. Defendant violated 815 ILCS 605/5(4) through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

    c. **Violations of ICSOA – 815 ILCS 605/6**

56. The ICSOA, pursuant to 815 ILCS 605/6, outlines the requirements for certain disclosures to be provided to consumers, including various pieces of information regarding the right to proceed against a surety bond.

57. Defendant violated 815 ILCS 605/6 through its failures to comply with the Illinois requirements for credit repair contracts.

    d. **Violations of ICSOA – 815 ILCS 605/7**

58. The ICSOA, pursuant to 815 ILCS 605/7(a)(1), requires that the contract between a consumer and a credit service organization must provide a notice of the right to cancel in a spot in immediate proximity to the place reserved for their signature on the contract. 815 ILCS 605/7(b) further requires the credit service organization to provide a copy of a notice of the right to cancel.

59. Defendant violated the above portions of the ICSOA through its failure to provide a conspicuous statement regarding the right to cancel in immediate proximity to the place for Plaintiff's signature, and similarly failing to provide the required notice of right to cancel, *inter alia*.

    e.   **Violations of ICSOA – 815 ILCS 605/8**

60. The ICSOA, pursuant to 815 ILCS 605/8, provides that any contract contrary to the terms of the ICSOA shall be void and unenforceable, and similarly constitutes a violation of the ICSOA.

61. Defendant violated the above portion of the ICSOA in much the same way it violated § 1679f.

WHEREFORE, Plaintiff, CECILIA MAXIE, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 815 ILCS 605/11;

c. Awarding Plaintiff punitive damages pursuant to 815 ILCS 605/11;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 815 ILCS 605/11; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

**COUNT III – VIOLATIONS OF THE ILLINOIS DEBT SETTLEMENT CONSUMER PROTECTION ACT**

62. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff is a "consumer" as defined by 225 ILCS 429/10.

64. Defendant is a "debt settlement provider" as defined by 225 ILCS 429/10.

65. The exemptions from the IDSCA for attorneys licensed to practice law in Illinois is not applicable to Defendant as Defendant was not "engaged in the practice of law" in relation with its dealings with Plaintiff and is similarly not an attorney licensed or authorized to practice in the state of Illinois.

    a. **Violations of 225 ILCS 429/120**

66. The IDSCPA, pursuant to 225 ILCS 429/10, outlines the nature of the required information debt settlement providers must provide in their contracts with consumers.

67. Defendant violated 225 ILCS 429/10 through its failure to provide the extent of requisite information required to be provided in its contracts with consumers.

    b. **Violations of 225 ILCS 429/125**

68. The IDSCPA, pursuant to 225 ILCS 429/125, outlines the nature of fees to be charged by debt settlement providers.

69. Defendant violated 225 ILCS 429/125 through the nature of its billing practices.

    c. **Violations of 225 ILCS 429/140**

70. The IDSCPA, pursuant to 225 ILCS 429/140, provides that "[a] debt settlement provider shall act in good faith in all matters under this Act."

71. Defendant violated the above provision of the IDSCPA through its failure to act in good faith at all times in its relations and dealings with Plaintiff.

    d. **Violations of 225 ILCS 429/145**

72. The IDSCPA, pursuant to 225 ILCS 429/145, outlines a number of prohibited practices on the part of debt settlement providers.

73. 225 ILCS 429/145(1) provides that a debt settlement provider shall not "[c]harge or collect from a consumer any fee not permitted by, in an amount in excess of the maximum amount permitted by, or at a time earlier than permitted by Section 125 of [the IDSCPA]."

74. Defendant violated the above provision of the IDSCPA through the nature of its billing practices.

75. 225 ILCS 429/145(2) provides that a debt settlement provider shall not "[a]dvise or represent, expressly or by implication, that consumers should stop making payments to their creditors, lenders, loan servicers, or loan guarantors or government entities."

76. Defendant violated the above provision of the IDSCPA through its explicit and implicit instructions that Plaintiff should cease making payments in connection with her enrolled obligations.

77. 225 ILCS 429/145(12) provides that a debt settlement provider shall not enter into a contract with a consumer without providing the requisite disclosures.

78. Defendant violated the above provisions of the IDSCPA by contracting with Plaintiff despite failing to provide the requisite disclosures.

79. 225 ILCS 429/145(13) provides that a debt settlement provider shall not "misrepresent any material fact, make a material omission, or make a false promise directed to one or more consumers in connection with the solicitation, offering, contracting, or provision of debt settlement services." Similarly, 225 ILCS 429/145(17) provides that a debt settlement provider shall not "employ an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information."

80. Defendant violated the above provisions of the IDSCPA in much the same way it violated the numerous provisions of the CROA outlined above.

WHEREFORE, Plaintiff, CECILIA MAXIE, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

c. Awarding Plaintiff punitive damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a ; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: April 5, 2023

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com